Hilary L. Barnes, State Bar #19669
Philip J. Giles, State Bar #30340
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., #1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
hbarnes@allenbarneslaw.com
pgiles@allenbarneslaw.com

Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>KAZBAR, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:17-bk-07611-DPC |
| In re:<br><br>COWBOY CIAO, L.L.C.<br><br>Debtor. | Chapter 11<br><br>Case No. 2:17-bk-07613-MCW |
| This filing applies to:<br><br>BOTH DEBTORS<br>☐ KAZBAR, L.L.C.<br>☐ COWBOY CIAO, L.L.C. | **EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO: (A) PAY PREPETITION WAGES AND SALARIES TO EMPLOYEES; (B) WITHHOLD AND PAY PAYROLL TAXES AND INSURANCE AMOUNTS; AND (C) PAY PREPETITION BENEFITS AND CONTINUE EMPLOYEE BENEFIT PROGRAMS** |

Pursuant to 11 U.S.C. §§ 105 and 507,[1] Kazbar, L.L.C. ("Kazbar") and Cowboy Ciao, L.L.C. ("Cowboy Ciao," and with Kazbar, the "Debtors"),[2] by and through their undersigned proposed counsel, jointly move this Court for entry of an interim order authorizing the Debtors

---

[1] Unless otherwise indicated, all Section and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure 1001-9037 ("Rules"), or the Local Bankruptcy Rules for the District of Arizona ("LBR").

[2] On the Petition Date, the Debtors filed a *Motion for Joint Administration* [DE #6 in *In re Kazbar, L.L.C.*, Case No. 17-07611], which is currently pending.

(i) to pay, in their discretion and subjection available funding, prepetition wages and salaries to their employees, (ii) to withhold and pay payroll taxes and insurance amounts; and (iii) to pay prepetition benefits and continue maintenance of employee benefit programs, including workers' compensation, as necessary. This Motion is supported by the *Declaration of Peter Kasperski* and the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. JURISDICTION AND VENUE AND GENERAL BACKGROUND

1. On July 3, 2017 ("Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Code. On the Petition Date, the Debtors also filed a *Motion for Joint Administration*, which is currently pending, to have the Cases jointly administered before Hon. Daniel P. Collins, the judge assigned to the lower-numbered case of Kazbar.

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. The Debtors continue to operate the businesses and manage their assets and affairs as debtors in possession under Code §§ 1107 and 1108.

4. The Debtors are Arizona limited liability companies located in Scottsdale, Arizona. Therefore, venue for the Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested herein are Code §§ 105 and 507(a)(4) and (5).

6. No trustee, examiner, or official committee of unsecured creditors has been appointed in the Cases.

7. Opened in 2001, Kazbar operates a speak-easy style lounge called Kazimierz World Wine Bar in the Southbridge area of Scottsdale, Arizona (the "Lounge"). The Lounge is open nightly, offers live entertainment, and serves cheeses, antipasto, and flatbreads to accompany an extensive assortment of wines and craft cocktails.

8. The Lounge is next door to Cowboy Ciao (the "Restaurant"), opened in 1997, an upscale restaurant that offers a sophisticated and eclectic menu for lunch and dinner accompanied by an extensive selection of wine and a full bar.

9. As of the Petition Date, the Debtors collectively employ approximately 53 employees ("Employees"): the Lounge employs 13 hourly Employees and 1 salaried Employee; the Restaurant employs 34 hourly Employees and 5 salaried Employees.

10. The Debtors operate separately but interdependently. The Lounge and the Restaurant use the same food and wine inventory, they deal with the same vendors, and they share a kitchen. The Debtors' ongoing business operations require the Employees' participation and service. The Debtors must be able to pay certain prepetition payroll obligations to avoid disruption, preserve employee morale, and ensure that the business of the Restaurant and Lounge is maintained and maximized for the benefit of their creditors.

## II. REQUESTED RELIEF

### A. Wages and Tips

11. As of the Petition Date, the Debtors owed accrued and unpaid wages, salaries, tips, bonuses and/or commissions, including vacation, severance, and sick leave obligations (collectively, the "Wage Claims") to its Employees. None of the Wage Claims are above the priority amount of $12,850 per Employee and in the aggregate will total approximately $31,752.80. A chart listing the amount owed to each Employee (and separated by place of employment) is attached hereto as **Exhibit A**, and is incorporated herein by this reference. The Debtors seek to satisfy accrued pre-petition obligations owing to individual Employees up to the statutory cap for Code § 507(a)(4) priority claims in the amount of $12,850.

12. In connection with the Wage Claims, applicable law requires the Debtors to withhold from employee payroll checks certain of the Employees' obligations, including, without limitation: federal, state and local income taxes, Social Security, Medicare, and unemployment taxes. In the ordinary course of business, the Debtors may also withhold from payroll checks: (i) employee contributions to medical, dental, insurance, disability, or similar plans; and (ii) other contributions or obligations of the Employees as directed by the Employees

or pursuant to applicable law. The Debtors anticipate that the pre-petition withholdings (including wage garnishments) total approximately $7,766.26.

13. In the ordinary course of the Debtors' business, as is customary with most companies, the Debtors established various benefit plans, programs and policies for its Employees (collectively, the "Benefit Obligations"). The Benefit Obligations may include, but are not necessarily limited to, obligations with respect to the following: (a) medical, dental, vision, and similar plans or benefits; (b) life insurance, accidental death and dismemberment, short-term disability, and similar plans or benefits; and (c) other miscellaneous benefits. The Debtors hereby request authorization to pay, in their discretion, such pre-petition Benefit Obligations for its Employees in full as they come due in the ordinary course of business. The Debtor further requests authorization to take such actions as may be necessary or appropriate, in its discretion, to ensure the continuation of the benefits for its Employees.

14. The Debtors hereby request authorization to pay, in their discretion, all unpaid Wage Claims that had accrued as of the commencement of these cases up to the statutory cap for priority claims in the amount of $12,850. Further, the Debtor requests authorization to make all such normal and customary deductions and withholdings and to pay all taxes and other obligations associated with the payment of the Wage Claims in the ordinary course of business.

**B. Reimbursement Obligations**

15. In the ordinary course of their duties on the Debtors' behalf, certain Employees may from time to time incur certain expenses for which the Debtors customarily reimburse them. In other cases, such expenses are directly charged to the Debtors, although the Employees could be obligated on the expense if the Debtors do not pay such expense ("Reimbursement Obligations"). The Debtors hereby requests authority to pay, in its discretion, such Reimbursement Obligations in full in the ordinary course of business.

**C. Authorization to Honor Existing Employee Plans, Practices, Programs, and Policies**

D. The Debtors also seek authorization, in their discretion and in the exercise of their business judgment, to honor and continue the existing plans, practices, programs, and policies

referenced herein in the ordinary course of business. Such authorization shall not be deemed to constitute post-petition assumption or adoption of any such plan, practice, program, policy, or agreement pursuant to Code § 365. The Debtors are in the process of reviewing these matters and reserves all of their rights under the Code in connection therewith. Moreover, the Debtors will retain their right to modify or terminate any such plan, practice, or policy at any time, and to treat any obligation arising thereunder as a general unsecured claim to the extent consistent with the Code.

## BASIS FOR RELIEF

Under the circumstances, the Debtors respectfully aver that it is appropriate and necessary for the Court to authorize the Debtor to pay the Wage Claims as set forth herein. The payment of these obligations is justified under Code § 105 and the "doctrine of necessity," and the Wage Claims are accorded priority under Code §§ 507(a)(4) and (5).

Code § 363(b)(1) authorizes the debtor-in-possession to "use, sell, other than in the ordinary course of business, property of the estate . . . ." Section 105(a) further permits courts to approve immediate payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of the pre-petition claims of employees. *See In re Chateaugay Corp.*, 80 B.R. 279, 286-88 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (authorizing payment of pre-petition wages, salaries, expenses and benefits); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (authorizing payment of pre-petition wages, salaries, reimbursable business expenses and health benefits). Moreover, courts have allowed immediate payment of certain pre-petition obligations under the "necessity of payment" doctrine. *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987).

Further, under Code § 507(a)(4), employees are granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the Debtors' business, whichever occurs first, for –
>
> (A) wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual….

11. U.S.C. § 507(a)(4). Similarly, Code § 507(a)(5) provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of $12,850 per employee covered by such plan, less any amounts paid pursuant to § 507(a)(4). *See* 11 U.S.C. § 507(a)(5).

Here, the payment of the Wage Claims in accordance with the Debtors' pre-petition business practice is in the best interests of the Debtors, their estates, and their creditors. Paying the Employees is critical to enabling the Debtor to operate and maximize the value of its assets without undue disruption and unnecessary debilitating staff turnover. Any deterioration in the morale and loyalty of the Employees at the outset of the Cases would adversely affect the Debtors' ability to maximize the value of their assets for the benefit of creditors. Finally, unless the Court approves the relief requested herein, the Employees will suffer an unnecessary and unwarranted hardship. The Employees obviously rely on their wages and benefits. Any interruption or disruption of payment of the Wage Claims could make it difficult for the Debtors to retain the Employees when their services are needed the most.

Because this Motion only seeks authorization to satisfy accrued Wage Claims owing to individual Employees within the statutory cap of $12,850, any payment of the Wage Claims does not prejudice the general unsecured creditors. In fact, to the extent that the payment of the obligations promotes the retention of Employees and preserves morale, payment of the Wage Claims should contribute to maximizing the value of the Debtors' estates for benefit of creditors.

## III. <u>CONCLUSION</u>

Based on the foregoing, the Debtors respectfully request entry of an Interim Order in the form attached hereto as **Exhibit B**, and a final order:

(a) Authorizing the Debtors, in their discretion, to pay and honor pre-petition wages, salaries, bonuses, and/or commissions, including vacation, severance, and sick leave owed to its Employees up to statutory maximum of $12,850, and related taxes and other obligations as well as all reimbursement obligations owed to Employees;

(b) Authorizing the Debtors to make all normal and customary withholdings and deductions from wages and other compensation paid to the Employees and to pay all applicable taxes and other obligations normal associated with such payments;

(c) Authorizing the Debtors to take such action as may be appropriate or necessary, in their discretion, to ensure the continuation of Employee benefits, including paying pre-petition claims of benefit provisions, service providers and other third parties, if any and as necessary;

(d) Setting a final hearing regarding this Motion; and

(e) Granting such further relief as is just and proper.

DATED: July 7, 2017.

**ALLEN BARNES & JONES, PLC**

/s/ *Hilary L. Barnes #19669*
Hilary L. Barnes
Philip J. Giles
Attorneys for Debtors

**E-FILED** on July 7, 2017 with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have
appeared in the case.

**COPY** mailed and emailed this same date via U.S. Mail to:

Jennifer A. Giaimo, Esq.
United States Trustee Program
230 N. First Ave., Suite 204
Phoenix, Arizona 85003
Email: Jennifer.A.Giaimo@usdoj.gov
*Trial counsel assigned to Kazbar, LLC*

Edward K. Bernatavicius, Esq.
United States Trustee Program
230 N. First Ave., Suite 204
Phoenix, Arizona 85003
*Trial counsel assigned to Cowboy Ciao, LLC*

Debtors' 20 Largest Creditors

/s/ *Misty Vasquez*

# Exhibit “A”

| EMPLOYEE WAGES/SALARIES 6/23/17 to 7/2/17 | | | | | |
|---|---|---|---|---|---|
| COWBOY CIAO | | | | | |
| **Employee Name** | **Hours Worked** | **Gross Wages** | **Taxes (est)** | **Outstanding Tips Due** | **Net Amount Due** |
| Alma Abrego | 18.12 | $199.32 | $18.66 | | $180.66 |
| Joey Avalos | 45.05 | $630.70 | $132.45 | | $498.25 |
| Juan Borja | 48.88 | $537.68 | $119.26 | | $418.42 |
| Candice Burnette | 38.01 | $380.10 | $47.51 | | $332.59 |
| Tein Burnette | 63.00 | $819.00 | $164.43 | | $654.57 |
| Valerie Cherry | 20.07 | $301.05 | $54.99 | | $246.06 |
| Dana Crockett | 31.33 | $250.64 | $103.70 | | $146.94 |
| Tagan Dering | 22.52 | $337.80 | $48.64 | | $289.16 |
| Ines Garcia | 39.15 | $391.50 | $36.02 | | $355.48 |
| John Germain | 18.97 | $132.79 | $22.76 | | $110.03 |
| Ricardo Gurrola | 61.30 | $613.00 | $66.82 | | $546.18 |
| Carlos Hernandez Islas | 35.37 | $353.70 | $30.77 | | $322.93 |
| Corbyn Hines | 9.15 | $91.50 | $15.01 | | $76.49 |
| Lou Hirleman | 4.33 | $30.31 | $3.38 | | $26.93 |
| Juan Galbes Roblero | 20.40 | $204.00 | $17.95 | | $186.05 |
| Mark Kulvinskas | 18.13 | $126.91 | $16.13 | $292.00 | $402.78 |
| Dennis Labita | 30.11 | $301.10 | $52.69 | $114.00 | $362.41 |
| Jeremy Lato | 32.65 | $326.50 | $27.12 | | $299.38 |
| Saul Leyva | 23.20 | $208.80 | $27.37 | $19.00 | $200.43 |
| Raymond Mack | 50.66 | $587.34 | $116.52 | | $470.82 |
| Sergio Mendiola | 57.70 | $692.40 | $149.44 | | $542.96 |
| Maryanne Moody | 6.45 | $45.15 | $6.71 | $106.95 | $145.39 |
| Andrew Moreno | 8.23 | $90.53 | $8.48 | | $82.05 |
| Magdalena Nava Montes | 37.93 | $379.30 | $33.00 | | $346.30 |
| Judy Nunez | 28.30 | $198.10 | $179.13 | | $18.97 |
| Olivia Christiani | 35.58 | $426.96 | $58.70 | $13.00 | $381.26 |
| Reuben Ortega | 36.42 | $451.56 | $49.90 | | $401.66 |
| Juan Carlos Ortiz Castoned | 37.63 | $451.56 | $49.29 | | $402.27 |
| Beth Poag | 44.63 | $356.01 | $193.69 | | $162.32 |
| Steven Ramos | 54.15 | $731.03 | $59.56 | | $671.47 |
| Marcus Sampson | 20.10 | $201.00 | $18.49 | | $182.51 |
| Elvia Santos-Remigio | 46.84 | $468.40 | $41.21 | | $427.19 |
| Augustin Tapia | 38.62 | $424.82 | $37.07 | | $387.75 |
| Becky Thibodeau | 30.60 | $214.20 | $174.42 | $1,544.84 | $1,584.62 |
| Max Thomas | 18.45 | $129.15 | $46.67 | $510.07 | $592.55 |
| Liana Tierney | 34.69 | $242.83 | $59.31 | | $183.52 |
| Juan Garcia Villalva | 35.25 | $387.75 | $56.75 | | $331.00 |
| Vjuan Villava Vasquez | 48.89 | $635.57 | $72.24 | | $563.33 |
| Garrison Whitting | 52.62 | $947.16 | $197.32 | | $749.84 |
| Rob Desko | Salary | $2,550.00 | $738.37 | | $1,811.63 |
| Country Velador | Salary | $1,625.00 | $279.47 | | $1,345.53 |
| Lester Gonzales | Salary | $3,040.00 | $915.99 | | $2,124.01 |
| Erica Sorenson | Salary | $1,400.00 | $264.37 | | $1,135.63 |
| Nancy Watson | Salary | $1,347.00 | $284.67 | | $1,062.33 |
| **SUBTOTAL COWBOY CIAO** | | **$24,259.22** | **$5,096.43** | **$2,599.86** | **$21,762.65** |

| KAZBAR | | | | | |
|---|---|---|---|---|---|
| **Employee Name** | **Hours Worked** | **Gross Wages** | **Taxes (est)** | **Tips** | **Net Wages Due** |
| Michelle Algarin | 17.6 | $184.86 | $34.32 | | $150.54 |
| Brittany Alger | 31.53 | $283.77 | $36.89 | $416.71 | $663.59 |
| Jesse Barrett | 33.93 | $373.23 | $72.32 | | $300.91 |
| Maegan Buckingham | 47.28 | $401.88 | $71.86 | $160.00 | $490.02 |
| Chris Dickerson | 37.45 | $468.13 | $118.71 | | $349.42 |
| Rachel Duby | 43.34 | $303.38 | $83.21 | | $220.17 |
| Aaron Ellis | 46.57 | $465.70 | $74.04 | | $391.66 |
| Raela Jernukian | 34.4 | $240.80 | $40.25 | $278.90 | $479.45 |
| Ashley Kahus | 26.88 | $215.04 | $61.01 | | $154.03 |
| Jared Kisler | 45.98 | $505.78 | $83.68 | | $422.10 |
| Saul Leyva | 14.4 | $158.40 | $24.33 | $138.00 | $272.07 |
| Juan Garcia Villalva | 75.9 | $834.90 | $185.96 | | $648.94 |
| Paige Yager | 22.53 | $157.71 | $27.94 | $151.48 | $281.25 |
| Samantha Dickerson | Salary | $2,900.00 | $800.03 | | $2,099.97 |
| **SUBTOTAL KAZBAR** | | **$7,493.58** | **$1,714.55** | **$1,145.09** | **$6,924.12** |
| **TOTAL (BOTH)** | | **$31,752.80** | **$6,810.98** | **$3,744.95** | **$28,686.77** |

# Exhibit “B”

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>KAZBAR, L.L.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:17-bk-07611-DPC |
| In re:<br><br>COWBOY CIAO, L.L.C.<br><br>Debtor. | Chapter 11<br><br>Case No. 2:17-bk-07613-MCW |
| This filing applies to:<br><br>☒ BOTH DEBTORS<br>☐ KAZBAR, L.L.C.<br>☐ COWBOY CIAO, L.L.C. | **INTERIM ORDER AUTHORIZING: (A) PAYMENT OF PRE-PETITION WAGES AND SALARIES TO EMPLOYEES; (B) WITHHOLDING AND PAYMENT PAYROLL TAXES AND INSURANCE AMOUNTS; AND (C) PAYMENT OF PRE-PETITION BENEFITS AND TO CONTINUE EMPLOYEE BENEFIT PROGRAMS** |

Upon consideration of the *Emergency Motion for Entry of Interim and Final Orders Authorizing Debtor to: (A) Pay Pre-Petition Wages and Salaries to Employees; (B) Withhold and Pay Payroll Taxes and Insurance Amounts; and (C) Pay Pre-Petition Benefits and Continue Employee Benefit Programs* ("Wage Motion") filed jointly by Kazbar, L.L.C. ("Kazbar") and Cowboy Ciao, L.L.C. ("Cowboy Ciao", and with Kazbar, the "Debtors"); and upon consideration of the *Declaration of Peter Kasperski*, and the entire record before the Court, and it appearing that the relief requested is in the best interests of the Debtors' estate, their creditors and all other parties-in-interest; and the Court having jurisdiction to consider the Wage Motion and the relief therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Wage Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper in in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and for the arguments made by counsel, and good cause appearing, it is **ORDERED** that:

A. The Wage Motion is granted on an interim basis.

B. A final hearing on the Wage Motion is scheduled for _______________, 2017 at __:__ a.m./p.m. ("Final Hearing"). Parties may appear in person at the U.S. Bankruptcy Court at 230 N. First Ave., Courtroom 602, Phoenix, Arizona 85003. Any party in interest may file an objection to the relief sought in the Wage Motion on or before ______________, 2017 ("Objection Deadline").

C. The Debtors are hereby authorized, in their discretion, to pay and honor pre-petition wages, salaries, bonuses, and/or commissions, including vacation, severance, and sick leave owed to their current employees up to $12,850.00, and related taxes and other obligations as well as all reimbursement obligations owed to employees;

D. The Debtors are authorized to make all normal and customary withholdings and deductions from wages and other compensation paid to their employees and to pay all applicable taxes and other obligations normal associated with such payments

E. The Debtors are authorized to take such action as may be appropriate or necessary, in their discretion, to ensure the continuation of employee benefits, including paying pre-petition claims of benefit provisions, service providers and other third parties;

F. The relief granted herein shall not be deemed an assumption of any contract under Code § 365.

G. Nothing herein shall operate to create any rights in favor of, or enhance the status of, any claim held by any employee or other party in interest.

H. The Order is without prejudice to any rights that the Debtors may otherwise have under applicable law to modify or terminate any plan, practice, program, or policy referenced herein at any time.

I. The Debtors are authorized to take all actions necessary to effectuate the relief granted by this Interim Order in accordance with the Wage Motion.

J. Entry of this Interim Order is without prejudice to the rights of any party in interest to interpose an objection to the Wage Motion at the Final Hearing. Absent the filing of any objection to the Wage Motion on or before the Objection Deadline, this Court may enter a Final Order without further hearing.

K. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

**DATED AND SIGNED ABOVE**